UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CRAIG FERGUSON and
REX HOLLAND

VERSUS

TRANSFORCE, INC.

CIVIL ACTION

24-862-SDD-SDJ

## RULING

Before the Court is the Motion to Dismiss Counterclaims filed by Plaintiffs, Craig Ferguson and Rex Holland ("Plaintiffs").[1] Defendant, TransForce, Inc. ("TransForce"), filed an Opposition,[2] and Plaintiffs filed a Reply.[3] For the reasons that follow, the Motion will be denied.

### I. BACKGROUND

Plaintiffs initiated this lawsuit under the Declaratory Judgment Act.[4] Plaintiffs are the former owners of Drive 360 Logistics, "a transportation recruiting firm primarily focused on staffing needs related to truck drivers and diesel mechanics."[5] Plaintiffs sold their company to Defendant, TransForce, in 2019, and thereafter became employed with TransForce.[6] In 2023, Plaintiffs signed two Stock Option Agreements (the "Agreements") with TransForce which contained non-competition and non-solicitation covenants.[7] Slightly over one year later, Plaintiffs were laid off by TransForce.[8] Plaintiffs allege they

---

[1] Rec. Doc. 18.
[2] Rec. Doc. 25.
[3] Rec. Doc. 26.
[4] Rec. Doc. 1.
[5] *Id.* at ¶ 2.
[6] *Id.*
[7] *Id.* at ¶¶ 3, 6, 19, 20.
[8] *Id.* at ¶ 4.

"have now moved to Louisiana to continue their work in the trucking staffing industry, which is the business in which they have worked for decades,"[9] and that they have incorporated a new company in that industry in Louisiana.[10] Plaintiffs allege the non-competition and non-solicitation covenants "are illegal restraints on trade that unreasonably limit Plaintiffs' ability to gain employment and [are] clearly unenforceable under Louisiana law."[11]

TransForce filed a Counterclaim requesting injunctive relief due to Plaintiffs' alleged breach of the non-competition and non-solicitation covenants.[12] Rather than argue the covenants are enforceable under Louisiana law, TransForce alleges that either Delaware law or Florida law applies to this action. TransForce's basis for application of Delaware law is a choice-of-law provision contained in the subject Agreements.[13] Alternatively, TransForce alleges that Florida law applies "since it was [Plaintiffs'] state of domicile for the entire time they worked for TransForce and when they signed the Stock Option Agreement[s]."[14] TransForce contends the restrictive covenants are valid under the laws of Delaware and Florida.[15]

Plaintiffs move to dismiss TransForce's Counterclaim.[16] Summarily, Plaintiffs argue that Louisiana law applies to this action, and that the non-competition and non-solicitation provisions in the Agreements are unenforceable as a matter of Louisiana law.

---

[9] *Id.*
[10] *Id.* at ¶ 8.
[11] *Id.* at ¶ 9.
[12] Rec. Doc. 14, pp. 8–15.
[13] *Id.* at ¶ 62.
[14] *Id.*
[15] *Id.* at ¶ 65.
[16] Rec. Doc. 18.

## II.  LAW AND ANALYSIS

### A. Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[17] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[18] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[19]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[20] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[21] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[23] "Furthermore, while the court must accept well-

---

[17] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[18] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted).
[19] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[20] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).
[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[22] *Id*.
[23] *Id*.

pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[24] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[25]

### B. Choice of Law

Plaintiffs argue that TransForce fails to state a claim under Louisiana law. In opposition, TransForce argues Louisiana law does not apply to this action. Instead, TransForce argues that either Delaware or Florida law applies. Accordingly, a choice of law analysis is necessary at the outset.

TransForce's argument for the application of Delaware law is based on the choice-of-law clauses in both Agreements which provide that they "shall be governed by and construed in accordance with the domestic laws of the state of Delaware[.]"[26] TransForce alternatively argues that Florida law applies because Florida has a more significant connection to this dispute.[27] Plaintiffs argue Louisiana law applies because the parties' stipulation to Delaware law is invalid, and because Louisiana has a greater interest in this dispute than Delaware and Florida.[28]

A federal court sitting in diversity applies the forum state's approach to conflicts of law.[29] Both Plaintiffs and TransForce fail to reference Louisiana Civil Code Article 3540, which specifically addresses contractual choice-of-law clauses. Article 3540 provides:

> All other issues of conventional obligations [besides capacity and form] **are governed by the law expressly chosen** or clearly relied upon by the parties, **except to the extent that**

---

[24] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[25] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[26] Rec. Doc. 1-1, pp. 20, 35.
[27] Rec. Doc. 25, pp. 5–7.
[28] Rec. Doc. 18-1, pp. 3–8.
[29] *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941).

**law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537**.[30]

Stated differently, this provision "allows contracting parties to stipulate to the law governing their agreement, except where the stipulated law contravenes the public policy of the state whose laws would otherwise apply."[31]

To determine what state's law would otherwise apply, Article 3537 provides the general rule that "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."[32] The language of Article 3537 continues:

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[33]

The "policies referred to in Article 3515" include:

> (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.[34]

---

[30] La. Civ. Code art. 3540 (emphasis added).
[31] *Ludwig v. Bottomly & Assocs., Inc.*, No. CIV. A. 95-3830, 1996 WL 426678, at *2 (E.D. La. July 26, 1996).
[32] La. Civ. Code art. 3537.
[33] *Id.*
[34] La. Civ. Code art. 3515.

Accordingly, as directed by Article 3540, the Court's first task is to determine which state's law would "otherwise be applicable" in the absence of the choice-of-law clause by considering the factors in Article 3537. Next, the Court considers whether application of the chosen state's law would contravene the public policy of the state whose law would otherwise apply.

Without engaging in the Article 3540 analysis, Plaintiffs conclude that the choice-of-law clause is void under Louisiana Revised Statute 23:921(A)(2), which prohibits choice-of-law clauses in "employment contract[s] or agreement[s]" unless the clause "is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action."[35] Plaintiffs argue the statute represents a strong public policy against choice-of-law clauses in employment agreements.[36] However, before considering whether application of Louisiana law voids the choice-of-law clause, it must be determined that Louisiana law would "otherwise be applicable," as provided by Article 3540, based on the guidance provided by Article 3537.[37]

Although Plaintiffs fail to apply the considerations of Article 3537 with respect to the choice-of-law clause, they do so later in their brief in connection with arguing that Louisiana law, rather than Florida law, should apply to the restrictive covenants in the Agreements.[38] First, Plaintiffs correctly argue that Louisiana has a strong public policy disfavoring non-competition and non-solicitation agreements. This policy is expressed in

---

[35] Rec. Doc. 18-1, pp. 3–4 (quoting La. R.S. 23:921(A)(2)).
[36] *Id.*
[37] *See, e.g., Lobrano v. C. H. Robinson Worldwide Inc.*, No. 10-CV-1775, 2011 WL 52602, at *2 (W.D. La. Jan. 7, 2011) (applying Article 3537 to determine what state's law would otherwise be applicable, rather than applying La. R.S. 23:921(A)(2) at the outset to void the choice-of-law clause); *Plunk v. LKQ Birmingham, Inc.*, No. CIV.A. 12-2680, 2013 WL 5913755, at *3 (W.D. La. Oct. 31, 2013) (same).
[38] Rec. Doc. 18-1, pp. 4–8.

La. R.S. 23:921, which states in part: "Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void."[39] The Louisiana Supreme Court explains that "Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement."[40] However, La. R.S. 921 also provides that an employee "may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment."[41]

In comparison, Florida law provides: "Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful."[42] However, Florida law also provides that, notwithstanding the foregoing provision, "enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited."[43] Florida courts hold that "[p]ublic policy in Florida favors enforcement of reasonable covenants not to compete,"[44] reasoning that "[e]nforcing these restrictive covenants

---

[39] La. R.S. 23:921(A)(1).
[40] *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La. 6/29/01), 808 So. 2d 294, 298 (citations omitted) (cleaned up).
[41] La. R.S. 23:921(C).
[42] Fla. Stat. Ann. § 542.18.
[43] Fla. Stat. Ann. § 542.335.
[44] *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014).

serves the public interest because it demonstrates that courts will uphold agreements, and employers can rely on non-compete agreements to protect their legitimate business interests."[45]

Article 3537 requires a comparison of the strength and pertinence of the involved states' policies "in the light of" certain listed factors. With respect to the contacts of each state to the parties and dispute, Plaintiffs allege, and TransForce appears to acknowledge in its Counterclaim, that Plaintiffs moved to Louisiana after their employment with TransForce was terminated in September of 2024.[46] Both parties also allege that Plaintiffs' new company was incorporated in Louisiana.[47] However, TransForce alleges and Plaintiffs do not dispute that they lived and worked in Florida during the entirety of their employment with TransForce, which would also include the time the Agreements were executed.[48] TransForce additionally alleges that even though Plaintiffs' company's principal office is in Louisiana, the company does not conduct business in Louisiana.[49] Instead, TransForce alleges the company conducts business in other states, including Florida.[50]

TransForce improperly attempts to contradict its own Counterclaim allegations by submitting evidentiary material purporting to show that Plaintiffs are actually domiciled in Florida, that their company was actually formed under the laws of Delaware, and that their company's principal office is actually in Florida.[51] "[I]t is axiomatic that a complaint may

---

[45] *Quirch Foods LLC v. Broce*, 314 So. 3d 327, 343 (Fla. Dist. Ct. App. 2020).
[46] Rec. Doc. 1, ¶ 35; Rec. Doc. 14, ¶¶ 54, 61.
[47] Rec. Doc. 1, ¶ 8; Rec. Doc. 14, ¶ 55.
[48] Rec. Doc. 14, ¶ 52; Rec. Doc. 18-1, pp. 7–8.
[49] Rec. Doc. 14, ¶ 56; Rec. Doc. 25, p. 6.
[50] *Id.*
[51] Rec. Doc. 25, pp. 1–7.

not be amended by the briefs in opposition to a motion to dismiss."[52] Accordingly, these new allegations in TransForce's Opposition will not be entertained at this stage.

Setting aside TransForce's impermissible assertions in its Opposition, the Court finds that a determination of what state's law would apply to this action in the absence of the choice-of-law clause involves factual considerations which are not properly resolved at the current stage of the litigation. Accepting the allegations of the Counterclaim as true, Plaintiffs moved to Louisiana after their employment was terminated, but the parties negotiated and executed the Agreements during their employment in Florida.[53] TransForce also alleges that Plaintiffs do business in states other than Louisiana, including Florida.[54] Thus, based on the current record, both Louisiana and Florida appear to have significant connection to this matter. Without additional information regarding the relationship of the states to the parties and the dispute (along with the other considerations under Article 3537), it is not clear at this point that Louisiana law would apply absent the choice-of-law clause.[55] Accordingly, further factual development is needed for the Court to determine "the strength and pertinence of the relevant policies of the involved states in the light of" the factors identified by Article 3537.

---

[52] *Jaraba v. Blinken*, 568 F. Supp. 3d 720, 727 (W.D. Tex. 2021) (quoting *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)).
[53] Rec. Doc. 14, ¶¶ 54–55.
[54] *Id.* at ¶ 56.
[55] *See Dalton v. Safeworks, LLC*, No. CIV.A. 09-3001, 2009 WL 4060462, at *8 (E.D. La. Nov. 20, 2009) (finding under similar circumstances that "the current record is not sufficiently developed to permit" the required analysis under Articles 3540 and 3537); *POSH Saudi Co. Ltd. v. Dynamic Indus., Inc.*, No. CIV.A. 20-3453, 2022 WL 912202, at *3 (E.D. La. Mar. 29, 2022) (defendant failed to establish Louisiana law would otherwise apply under Article 3537; defendant's argument focused solely on the fact that it was a Louisiana company, but the subject agreement was "principally negotiated and executed" outside of Louisiana).

Accordingly, because Plaintiffs have not established that Louisiana law applies to this matter, Plaintiffs' Motion to Dismiss TransForce's Counterclaim for failure to state a claim under Louisiana law will be denied.[56]

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss[57] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 15th day of July, 2025.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[56] Plaintiffs additionally argue that TransForce's solicitation allegations are insufficient to give rise to a plausible claim. Rec. Doc. 18-1, pp. 10–11. Because it remains unclear at this point what state's law applies to this action, the Court will not rule on the merits at this time.
[57] Rec. Doc. 18.